IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAKISHA GLOVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-956 |
| | ) | |
| COMFORT INN and CHOICE HOTELS INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff LaKisha Glover brings this action against Defendants Comfort Inn, Inc. ("Comfort Inn") and Choice Hotels International, Inc. ("Choice Hotels") alleging race discrimination claims under § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. (Docket No. 1). Presently before the Court are Defendants' Motions to Dismiss ("Motions"). (Docket Nos. 9, 19). In their Motions and briefs in support, Defendants urge the Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 10, 19, 20). Plaintiff has also filed briefs in opposition to Defendants' Motions (Docket Nos. 12, 23), and Defendants have filed briefs in reply (Dockets Nos. 13, 24). After careful consideration of the parties' arguments and for the following reasons, Defendants' Motions will be granted and Plaintiff's claims will be dismissed.

## I. BACKGROUND

Plaintiff filed her Complaint on July 8, 2025, asserting race discrimination claims under § 1981. (Docket No. 1). As set forth in the Complaint, Plaintiff suffered a house fire in August 2021 and sought temporary relief from the Red Cross, which arranged accommodations for her at Choice Hotels' Comfort Inn. (*Id.* ¶ 6). Plaintiff stayed at the Comfort Inn from August to October 2021. (*Id.* ¶ 8). While at the Comfort Inn, Plaintiff believed that hotel policy allowed guests staying longer than three days to receive an in-room microwave, so Plaintiff requested, and the Comfort Inn General Manager Sarah Lawrence ("Lawrence") approved her for, a microwave in her room. (*Id.* ¶ 9). Plaintiff then asserts that she contacted the front desk regarding this request, and that Comfort Inn Manager Debbie Constabile ("Constabile") replied that "N***** don't deserve a microwave." (*Id.* ¶ 10). Plaintiff alleges that Front Desk Agent Cecelia Coleman witnessed this incident and reported it to Lawrence, and that Plaintiff also reported the incident to "the breakfast organizer" at the hotel. (*Id.* ¶ 12).

After these reports, Plaintiff avers that she was subject to retaliation from Constabile, specifically, that Constabile accused her of smoking marijuana in her room and tried to evict her. (Docket No. 1 ¶ 13). Plaintiff alleges that this retaliation became a broader pattern of behavior, in that Constabile "attempt[ed] to remove several other Black guests by falsely accusing them of smoking in their rooms, calling the police on them without legitimate complaint, and placing them on Comfort Inn's 'do not rent' list," as well as "removing her nametag to prevent guests from ascertaining her name and wearing a Pittsburgh Police jacket for its intimidating effect on Black employees and guests." (*Id.* ¶ 14). Plaintiff alleges that this treatment did not apply to "white guests and even white non-guests," who were treated with "respect and courtesy," and that a "whole family of white non-guests [were allowed] to use the Inn pool." (*Id.* ¶ 17). This

allegedly differentiated treatment, including "[w]hite guests['] access to amenities such as microwaves and [the] pool … while [Plaintiff] was not," Plaintiff claims, is "an interference with her right to contract based on race." (*Id.* ¶ 20).

Plaintiff filed her Complaint in this action on July 8, 2025. (Docket No. 1). On November 3, 2025, Comfort Inn filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6). (Docket No. 9). On January 5, 2026, Defendant Choice Hotels filed a Motion to Dismiss Plaintiff's Complaint for insufficient service of process pursuant to Rule 12(b)(5), and failure to state a claim pursuant to Rule 12(b)(6). (Docket No. 19).[1] The Motions have been fully briefed by the parties and are ripe for decision.

## II. <u>STANDARD OF REVIEW – 12(b)(6)</u>

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).

While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks

---

[1] This Court's December 23, 2025, Order resolved Plaintiff's service issue, stating: "the Court will not dismiss the Complaint against Choice Hotels pursuant to Fed. R. Civ. P. 4(m)." (Docket No. 18 docket text entry). Choice Hotels accepted service on December 15, 2025 (Docket No. 16 docket text entry). This Court was satisfied with the reasons provided by Plaintiff in response to the Court's Order to Show Cause, and Defendant accepted service. Accordingly, Defendants cannot pursue a Rule 12(b)(5) motion based on a defect in service. *See Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116 (3d Cir. 1997) ("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation"). Consequently, herein the Court will solely address Defendants' Motions to the extent they seek dismissal pursuant to Rule 12(b)(6).

omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; accordingly, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court identifies the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See id.* (citing *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). This "plausibility" determination is

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Indeed, § 1981 disallows racial discrimination in the "mak[ing] and enforc[ing] [of] contracts," which is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see Gross v. R.T. Reynolds, Inc*., 487 F. App'x 711, 716 (3d Cir. 2012). The United States Supreme Court has held that "[§] 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006).

To state a claim for race discrimination under § 1981, a plaintiff must show "(1) [she] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts …" *Gross,* 487 F. App'x at 716; 42 U.S.C. § 1981(a). For the second element, a plaintiff must plead that the defendant intentionally discriminated against her "because of race" in the context of a contractual relationship, and this

discrimination is based on specific facts alleged in her complaint. *Talbert v. Beal Bank USA*, No. CV 23-2147, 2023 WL 6465385, at *5 (E.D. Pa. Oct. 4, 2023). Discrimination can be proven by either direct or indirect evidence. *Calhoun v. TJM Trevose, LLC*, No. 2:22-CV-3852-JDW, 2023 WL 5208853, at *3 (E.D. Pa. Aug. 14, 2023). When a plaintiff offers only indirect evidence, courts considering § 1981 discrimination cases follow the burden shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), under which a plaintiff must first establish a prima facie case for discrimination. *See Kinnard v. Comfort Inn*, No. 2:23-CV-01333-MJH, 2025 WL 1882830, at *3 (W.D. Pa. July 8, 2025). If the plaintiff establishes a prima facie case, then the defendant can offer, in turn, a legitimate, nondiscriminatory reason for its conduct. *See id.* After that, the plaintiff "must then offer evidence to show that [d]efendant['s] legitimate non-discriminatory reason was pretextual." *Id.*

With regard to the third element, "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship … [A] § 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest." *Rhoades v. Days Inn by Wyndham*, No. 3:21-CV-01990, 2023 WL 4565467, at *3 (M.D. Pa. July 17, 2023) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *Paschal v. Billy Beru, Inc.*, No. 08-CV-1144, 2009 WL 1099182, at *4 (W.D. Pa. Apr. 23, 2009), *aff'd*, 373 F. App'x 213 (3d Cir. 2010)).

Here, Plaintiff has sufficiently pled the first and second elements of a prima facie case for racial discrimination under § 1981. Plaintiff alleges that she is a Black woman. (Docket No. 1 ¶ 3). Plaintiff also plausibly alleges that Defendants' actions were intentionally discriminatory

towards her. She avers that Comfort Inn's front desk manager used the n-word to her in response to her request for a microwave, (*id.* ¶ 10), that she was accused of doing drugs as retaliation for reporting the front desk manager's usage of the n-word, (*id.* ¶ 13), and that she witnessed the front desk manager participating in other racially hostile acts towards Black guests, including "falsely accusing them of smoking in their rooms, calling the police on them without legitimate complaint, placing them on Comfort Inn's 'do not rent' list, removing her nametag, and wearing a Pittsburgh Police jacket in order to intimidate Black guests" (*id.* ¶ 13–14). These allegations, accepted as true, clearly show that the front desk manager, as an agent of Defendants, intended to discriminate against Plaintiff on the basis of her race. *See, e.g., Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (holding that a "single use of the n-word" was probative of discriminatory intent); *Bailey v. Binyon*, 583 F. Supp. 923, 927 (N.D. Ill. 1984) ("The use of the word [n*****] automatically separates the person addressed from every non-black person; this is discrimination *per se.*").

However, Plaintiff's allegations are insufficient to support the third element of a § 1981 race discrimination claim. In her Complaint, Plaintiff does not plausibly contend Defendants' discrimination blocked the creation of a contractual relationship, or that Defendants' discrimination impaired the existing contract that Plaintiff had with Defendants. *See Paschal v. Billy Beru, Inc.*, No. CIV.A. 08-1144, 2009 WL 1099182, at *4 (W.D. Pa. Apr. 23, 2009), *aff'd,* 373 F. App'x 213 (3d Cir. 2010) ("A § 1981 claim for interference with the right to make and enforce a contract must involve the *actual loss of a contract interest*." (emphasis added)). Plaintiff claims that Defendants denied her access to a personal, in-room microwave due to her race. (Docket No. 1 ¶ 9–10).[2] However, she does not claim that white guests were afforded a

---

[2] Defendants urge this Court to consider factual filings in a separate Pennsylvania Human Relations Commission ("PHRC") record, attached as an exhibit to Comfort Inn's Motion to Dismiss (Docket No. 9, 9-2) in

different form of access to the hotel's microwaves than she was. (*Id.* ¶¶ 9, 20). Plaintiff alleges that "white guests were afforded access to amenities such as microwaves and pool access while Ms. Glover was not," but she also alleges that she was able to "us[e] the [hotel's] front desk microwave" and does not claim that she attempted to use the hotel's pool and was denied. (*Id.*). Accordingly, it is unclear how Defendants' discrimination impaired Plaintiff's existing contract with Defendants.

Moreover, the present case is distinguishable from cases where § 1981 claims survived the motion to dismiss stage because plaintiffs alleged that they were deprived of contractual benefits due to racial discrimination. *See, e.g., McCaleb v. Pizza Hut of Am., Inc.,* 28 F.Supp.2d 1043, 1046–47 (N.D. Ill. 1998) (finding that African–American plaintiffs did not receive the "full benefits" of a restaurant contract when they were not provided with plates, utensils and drinks offered to white patrons, and were subjected to racial harassment which drove them out of the restaurant prior to finishing their meal); *Perry v. Burger King Corp.,* 924 F. Supp. 548, 551–52 (S.D.N.Y. 1996) (African–American plaintiff stated a cause of action under § 1981 where he was provided with the food he purchased, but was not permitted to use the bathroom, a benefit that was available to the restaurant's white patrons); *Hill v. Shell Oil, Co.*, 78 F. Supp. 2d 764 (N.D. Ill. 1999) (holding that defendant gas station's practice of requiring African–American customers to pre-pay for gas, while allowing white customers to post-pay, was sufficient to support a § 1981 racial discrimination claim).

---

order to evaluate the veracity of this allegation. However, at this stage of litigation, only matters of public record can be considered. *See Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010); *Wormack v. Shinseki,* 2010 WL 2650430, at *1 n. 1 (W.D. Pa. July 1, 2010) (holding that "in the Third Circuit, it is well settled that a court may consider administrative documents, *such as a plaintiff's EEOC charges and public records* without converting the motion to dismiss to a motion for summary judgment" (emphasis added)). The PHRC factual findings to which Defendants cite are neither the Plaintiff's PHRC charging documents, nor are they alleged to be publicly available. Accordingly, the factual allegations pled in Plaintiff's Complaint (Docket No. 1) govern for the purposes of ruling on Defendants' Motions to Dismiss.

Rather, Plaintiff's case is reminiscent of other cases from district courts in the Third Circuit where the plaintiffs' allegations of discrimination did not impact their full receipt of contractual benefits. *See, e.g., Rhoades,* 2023 WL 4565467, at *4 ("Rhoades does not plead facts that would indicate that he was required to enter the contractual relationship with Defendants on discriminatory terms, that the terms of his transaction were fundamentally altered based on his race, or that he was deprived of *any* benefit of an actual contractual interest."); *Billy Beru*, 2009 WL 1099182, at *4-5 (granting motion to dismiss where "[p]laintiff was permitted to carry out his contract with [restaurant] under the same terms and conditions as white customers"); *Singh v. Wal-Mart Stores, Inc.*, No. 98-1613, 1999 WL 374184, at *6 (E.D. Pa. June 10, 1999), *aff'd*, 225 F.3d 650 (3d Cir. 2000) (considering a claim for race discrimination in a retail context and holding that plaintiff must show that not only did he attempt "to make, enforce or secure the performance of a contract" but also "*that he was denied the right to do so*" (emphasis added)).

Indeed, Plaintiff's Complaint does not aver that she was deprived of the full contractual benefits of her stay, and therefore her § 1981 claims cannot survive a motion to dismiss. *See Singh,* 1999 WL 374184, at *6 (rejecting argument that § 1981 provides remedy for breach of unstated contract that all who enter a commercial establishment will be treated equally as "such a theory would come close to nullifying the contract requirement of § 1981 altogether, thereby transforming the statute into a general cause of action for race discrimination in all contexts" (quoting *Lewis v. J.C. Penney Co.*, 948 F. Supp. 367, 371–72 (D. Del. 1996))). Accordingly, Plaintiff's claims of race discrimination under § 1981 will be dismissed without prejudice to amendment with sufficient facts to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the reasons stated, Defendants' Motions to Dismiss Plaintiff's Complaint are granted, and Plaintiff's § 1981 claims against Defendants is dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Such dismissal is without prejudice to amendment with sufficient facts to state a claim upon which relief can be granted.

An appropriate Order follows.

Dated: September 18, 2026

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record